UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

HAWAII-PACIFIC APPAREL GROUP,
INC.,

        Plaintiff/Counterclaim Defendant,

        -against-

CLEVELAND BROWNS FOOTBALL
COMPANY LLC and NATIONAL
FOOTBALL LEAGUE PROPERTIES, INC.,

        Defendants/Counterclaim Plaintiffs.

Case No.: 04 CV 7863 (DC)

## DEFENDANTS' RESPONSES TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE RE: MOTION FOR PARTIAL SUMMARY JUDGMENT ON PRIORITY[*]

In accordance with Local Civil Rule 56.1, Defendant/Counterclaim Plaintiff Cleveland Browns Football Company LLC and NFL Properties LLC, as successor-in-interest to Defendant/Counterclaim Plaintiff National Football League Properties, Inc., by their attorneys, White & Case LLP, hereby submit the following responses to controvert Plaintiff/Counterclaim Defendant Hawaii-Pacific Apparel Group, Inc's ("HP") Statement of Material Facts Not In Dispute Re: Motion For Partial Summary Judgment ("HP's 56.1 Statement").

Many "facts" alleged "in HP's 56.1 Statement are unsupported by any admissible evidence. Indeed, HP has failed to comply with Local Rule 56.1, which requires the moving party on a motion for summary judgment to submit numbered statements of fact, each of which contains citations to the record to support the factual assertion made therein. See Local Rule 56.1(d). Accordingly, the Court may strike HP's statements not accompanied by citations, and deem the corresponding facts in Defendants' Rule 56.1 Statement admitted. See Carmel Central

---

[*]     Defendants have filed this document electronically.

School Dist. v. V.P. ex rel. G.P., --F. Supp2d. ---, No. 04CIV.3320(CM)(LMS), 2005 WL 146972, at *5-7 (S.D.N.Y. Jun. 9, 2005) (striking statements in party's 56.1 Statement which were unsupported by citations to record). Further, even if they were accurate—which they are not—many of the facts provided in HP's 56.1 Statement are immaterial to the issue of trademark priority before this Court. Accordingly, this Court should disregard HP's 56.1 Statement and supporting declarations and deny HP's Motion For Partial Summary Judgment On Priority of Use In Interstate Commerce.

In the event that this Court deems a response necessary, Defendants respond to the specific statements of HP as follows:

**HP'S CONTENTION NO. 1:**

Hawaii-Pacific Apparel Group, Inc. ("HP"), is a Hawaii corporation with its principal place of business at 3037 Vail Avenue, Los Angeles, California 90040.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 1:**

Defendants do not dispute this statement, but contend that it is immaterial to the issue of trademark priority before this Court.

**HP'S CONTENTION NO. 2:**

Cleveland Browns Football Company, LLC ("the Browns"), is a Delaware limited liability company with its principal place of business at 76 Lou Groza Boulevard, Berea, Ohio 44017.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 2:**

Defendants do not dispute this statement, but contend that it is immaterial to the issue of trademark priority before this Court.

**HP'S CONTENTION NO. 3:**

National Football League Properties, Inc. ("NFLP"), is a California corporation with its principal place of business at 280 Park Avenue, New York, New York 10017.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 3:**

Defendants dispute this statement because it is unsupported by the admissible evidence in this case. The admissible evidence in this case supports the fact that National Football League Properties, Inc. ("NFLP") was a California corporation with its principal place of business at 280 Park Avenue, New York, New York 10017. (Proper Decl. ¶ 3.) In any event, Defendants contend that this statement is immaterial to the issue of trademark priority before this Court. Accordingly, no genuine issue of material fact exists to be tried.

**HP'S CONTENTION NO. 4:**

The National Football League ("NFL"), is a group of professional football teams, one of which is the Cleveland Browns, which is owned and operated by the Browns. The member teams of the NFL engage during the football season in competitive sporting contests, all of which are televised regionally and/or nationally.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 4:**

Defendants do not dispute this statement.

**HP'S CONTENTION NO. 5:**

NFLP is an affiliate of the NFL. NFLP is the exclusive trademark licensee of the member teams of the NFL, including the Cleveland Browns. On behalf of the NFL and its member teams, NFLP sublicenses the manufacture and sale of goods and merchandise bearing the logos and trademarks of the member teams.

## DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 5:

Defendants do not dispute that on behalf of the NFL and its Member Clubs, NFLP sublicenses the manufacture and sale of goods bearing the logos and trademarks of the Member Clubs. However, Defendants dispute the statements that "NFLP is an affiliate of the NFL" and that "NFLP is the exclusive trademark licensee of the member teams of the NFL, including the Cleveland Browns" because they are unsupported by the admissible evidence in this case. The admissible evidence in this case supports the fact that NFL Properties LLC is jointly owned in equal shares by the Member Clubs of the NFL, has been authorized to use the trademarks owned by the Member Clubs for commercial purposes, is the exclusive trademark enforcement arm for the Member Clubs, and that until March 31, 2004, NFL Properties LLC was the exclusive licensee of the Member Clubs of the NFL. (Proper Decl. ¶¶ 4, 11.) Accordingly, no genuine issue of material fact exists to be tried.

## HP'S CONTENTION NO. 6:

The Cleveland Browns played football as one of the member clubs of the NFL from about the early 1950s until the team moved to Baltimore, which move was announced on November 6, 1995. A new Cleveland Browns football club began playing football in Cleveland commencing with the 1999 season.

## DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 6:

Defendants dispute this statement because it is unsupported by the admissible evidence. The admissible evidence in this case supports the fact an entity controlling the Browns since 1950 moved to Baltimore, which move was announced on November 6, 1995 and a new entity began operating the NFL team called the Browns in 1999. (Lucarelli Decl. ¶ 4; Proper Decl.

¶ 12.) In any event, Defendants contend that this statement is immaterial to the issue of trademark priority before this Court.

**HP'S CONTENTION NO. 7:**

Since 1986, HP has been engaged in the sale of wearing apparel and footwear, and such sales have extended throughout the United States over the years subsequently and continuously up to the date hereof.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 7:**

Defendants dispute this statement because it is unsupported by the admissible evidence in this case. The admissible evidence in this case supports the fact that HP has been engaged in the sale of apparel since 1986. (Shepherd Decl. ¶ 1; HP's Ex. B at 16:15-20.) In any event, Defendants contend that this statement is immaterial to the issue of trademark priority before this Court. Accordingly, no genuine issue of material fact exists to be tried.

**HP'S CONTENTION NO. 8:**

Commencing some time in 1985 or thereabouts, fans and supporters of the Cleveland Browns who congregated at a particular location in Municipal Stadium in Cleveland (where the Cleveland Browns then played their home games) began to identify themselves as particularly avid supporters of the team and referred to that location as the "dawg pound." Certain of the Browns players also became known as "the dawgs."

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 8:**

Defendants dispute this statement because it is unsupported by the admissible evidence in this case. The admissible evidence in this case supports the fact that during the fall of 1984, the Cleveland Browns and the public began to refer to the Club's defense as the "Dawgs," and to show their support for the team, Cleveland Browns fans started arriving at Municipal Stadium in

dog masks, wearing dog attire and carrying other dog-related paraphernalia, such as bones and biscuits. (Lucarelli Decl. ¶ 5.) Because the fans in the "bleachers" at the open end of the Stadium were most partial to wearing this dog-related apparel, millions of viewers, listeners, readers and, most recently, Internet subscribers everywhere have referred to this section of the Stadium as the "Dawg Pound." (Id. ¶ 6.) Many also have referred to the whole of the Stadium as the "Dawg Pound" because it is the place where the "Dawgs" play. (Id.) Accordingly, no genuine issue of material fact exists to be tried.

## HP'S CONTENTION NO. 9:

The "old" Browns on or about November 1, 1985, filed with the Secretary of State of Ohio three trademark registration applications using the term CLEVELAND BROWNS, together with DOGS or DAWGS and a graphic football motif. Registrations issued, but all three registrations were canceled for nonrenewal in November and December of 1995.

## DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 9:

Defendants dispute this statement because it is unsupported by the admissible evidence in this case. The admissible evidence in this case supports the fact that on October 25, 1985 the Cleveland Browns filed a trademark application with the Ohio Secretary of State for the trademark "Cleveland Browns Dogs" and Design, and were issued a registration for this trademark on November 1, 1985, and that on August 1, 1988 the Cleveland Browns filed a trademark application with the Ohio Secretary of State for the trademark "Cleveland Browns Dawgs," and Design, and were issued a registration for this trademark on August 8, 1998. (McDowell Decl. ¶ 15.) Each of these trademark registrations expired ten years from the date of its issuance. Accordingly, no genuine issue of material fact exists to be tried.

**HP'S CONTENTION NO. 10:**

On or about June 30, 1988, an application by the Browns to register the mark DAWG with the State of Ohio was rejected because of a risk of confusion with other marks registered in Ohio and other corporate names.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 10:**

Defendants do not dispute this statement, but contend that it is immaterial to the issue of trademark priority before this Court.

**HP'S CONTENTION NO. 11:**

The term DAWG POUND was adopted as a trademark on behalf of HP by its founder and principal Donald Shepard in about 1991.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 11:**

Defendants dispute this statement because it is unsupported by the admissible evidence in this case. The admissible evidence in this case supports the fact that on September 26, 2000, Donald Shepard testified that his son had the idea to name HP's second label DAWG POUND sometime between September 1993 and September 1995. (HP's Ex. B at 85:7-18.) In any event, Defendants contend that this statement is immaterial to the issue of trademark priority before this Court. Accordingly, no genuine issue of material fact exists to be tried.

**HP'S CONTENTION NO. 12:**

Since at least March 1, 1994, and March 8, 1994, respectively, HP began using trademarks consisting of the words LIL DAWG POUND and DAWG POUND for the purpose of identifying its goods and distinguishing them from the goods of other manufacturers and sellers.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 12:**

Defendants do not dispute that HP began using the designations LIL DAWG POUND and DAWG POUND in March of 1994. HP has not submitted any admissible evidence to support "the purpose" of HP's use. Accordingly, no genuine issue of material fact exists to be tried.

**HP'S CONTENTION NO. 13:**

The first actual shipment of goods by HP in connection with the DAWG POUND mark was on or about May 6, 1994, to a Wal-Mart store in Mililani, Hawaii, and on August 11, 1994, to a Mervyn's store in West Valley City, Utah.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 13:**

Defendants do not dispute this statement.

**HP'S CONTENTION NO. 14:**

HP applied to register the mark DAWG POUND in Class 25 on March 8, 1994, but that application was opposed by NFLP and is now suspended, pending the outcome of this litigation.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 14:**

Defendants do not dispute this statement, but contend that it is immaterial to the issue of trademark priority before this Court.

**HP'S CONTENTION NO. 15:**

HP is the owner of the trademark LIL DAWG POUND, U.S. Registration No. 1,963,463 in International Class 25, which issued on March 19, 1996, in favor of HP. The application for registration alleged first use of the mark in commerce on March 1, 1994. The application was unopposed and uncontested.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 15:**

Defendants do not dispute this statement, but contend that it is immaterial to the issue of trademark priority before this Court.

**HP'S CONTENTION NO. 16:**

The first actual shipment of goods by HP bearing the mark LIL DAWG POUND was to a Mervyn's store on or about April 6, 1995.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 16:**

Defendants do not dispute this statement.

**HP'S CONTENTION NO. 17:**

HP is the owner of the trademark TOP DAWG, U.S. Registration No. 1,886,130 in Class 25, which issued on March 28, 1995, in favor of HP.  The application for registration alleged first use of the mark in commerce on February 1, 1991.  The application was unopposed and uncontested.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 17:**

Defendants do not dispute this statement, but contend that it is immaterial to the issue of trademark priority before this Court.

**HP'S CONTENTION NO. 18:**

The first shipment of goods bearing the TOP DAWG mark by HP was on or about November 17, 1991, to an Iacon store in Scottsdale, Arizona.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 18:**

Defendants do not dispute this statement.

**HP'S CONTENTION NO. 19:**

The first shipment of goods bearing the DA DAWG mark by HP was on or about January 22, 1997, to a Wal-Mart warehouse in Palestine, Texas.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 19:**

Defendants do not dispute this statement.

**HP'S CONTENTION NO. 20:**

Advertising and promotional allowances for goods sold bearing DAWG marks were made to HP by Wal-Mart as early as May 20, 1999, and by K-Mart from about May 25, 2000.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 20:**

Defendants dispute this statement because it is unsupported by the admissible evidence in this case. The admissible evidence in this case supports the fact that between May and September of 1999, Wal-Mart Stores, Inc. invoiced HP for "promotional allowances" totaling $1,080.00, and that in May of 2000 K-Mart Corporation invoiced HP for "advertising allowances" totaling $6,852.00. (HP's Exs. J, K.) Accordingly, no genuine issue of material fact exists to be tried.

**HP'S CONTENTION NO. 21:**

HP's registered trademarks, as displayed on HP's garments and other products, are accompanied by the symbol ® to provide notice that the trademark has been registered.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 21:**

Defendants dispute this statement because it is unsupported by the admissible evidence in this case. HP has not submitted any admissible evidence to support this fact. In any event, Defendants contend that this statement is immaterial to the issue of trademark priority before this Court. Accordingly, no genuine issue of material fact exists to be tried.

**HP'S CONTENTION NO. 22:**

The Browns filed the following intent-to-use applications with the U.S. Patent & Trademark Office for the marks indicated, pursuant to 15 U.S.C. § 1051(b):

Application No. 75/668612 filed April 20, 1999 for DAWG POUND; nonfinal action of denial mailed Sept. 9, 1999;

Application No. 75/687371 filed April 20, 1999 for DAWG POUND (graphic image); nonfinal action of denial mailed Oct. 20, 1999;

Application No. 75/687370 filed April 20, 1999 for DAWG POUND (graphic image); nonfinal action of denial mailed Sept. 16, 1999;

Application No. 75/687369 filed April 20, 1999 for DAWG POUND (graphic image); nonfinal action of denial mailed Oct. 20, 1999;

Application No. 75/687368 filed April 20, 1999 for DAWG POUND (graphic image); nonfinal action of denial mailed Sept. 8, 1999;

Application No. 75/786051 filed April 28, 1999 for DAWG POUND (graphic image); nonfinal action of denial mailed Jan. 6, 2000.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 22:**

Defendants dispute the statement that the Browns filed Application No. 75/668612 on April 20, 1999 for DAWG POUND and that a nonfinal action of denial was mailed on September 9, 1999 because it is unsupported by the admissible evidence in this case. The admissible evidence in this case supports the fact that the Browns filed Application No. 75/668612 on March 26, 1999 for the mark DAWG POUND and that a nonfinal action was mailed on September 9, 1999. (HP's Ex. L; Proper Decl. ¶ 13.) In addition, Defendants dispute the statement that the Browns filed Application No. 75/786051 on April 28, 1999 for DAWG

11

POUND (graphic image) and that a nonfinal action of denial was mailed on January 6, 2000 because it is unsupported by the admissible evidence in this case. The admissible evidence in this case supports the fact that the Browns filed Application No. 75/786051 on August 28, 1999 for the PUPPY POUND mark and that a nonfinal action was mailed on January 6, 2000. (Proper Decl. ¶ 13.) In any event, Defendants contend that these statements are immaterial to the issue of trademark priority before this Court. Accordingly, no genuine issue of material fact exists to be tried.

## HP'S CONTENTION OF NO. 23:

Registration was refused by the PTO with respect to the foregoing applications, based on the risk of confusion with HP's previously registered LIL DAWG POUND mark and earlier application to register the mark DAWG POUND.

## DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 23:

Defendants dispute this statement because it is unsupported by the admissible evidence in this case. The admissible evidence in this case supports the fact that the examining attorney reviewed the Browns' Application Nos. 75/687371 and 75/687368 for the marks DAWG POUND and Design and found there was no likelihood of confusion between these applications and any applications or registrations owned by HP. (Proper Decl. ¶ 14.) In any event, Defendants contend that this statement is immaterial to the issue of trademark priority before this Court. Accordingly, no genuine issue of material fact exists to be tried.

## HP'S CONTENTION NO. 24:

The earliest use by the Browns or NFLP of the mark DAWG POUND in commerce in connection with the sale of goods in International Class 25 was in 1999 or 2000.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 24:**

Defendants dispute this statement because it is unsupported by the admissible evidence in this case. The admissible evidence in this case supports the fact that the Browns and NFLP used the mark DAWG POUND in commerce in connection with goods in International Class 25 at least as early as October 1, 1989. (McDowell Decl. ¶ 20.) Accordingly, no genuine issue of material fact exists to be tried.

**HP'S CONTENTION NO. 25:**

On March 29, 2000, HP, via undersigned counsel, sent a letter to the Browns and NFLP, demanding that they immediately cease and desist using HP's trademark, DAWG POUND.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 25:**

Defendants do not dispute this statement, but contend that it is immaterial to the issue of trademark priority before this Court.

**HP'S CONTENTION NO. 26:**

On or about May 8, 2000, the Browns and NFLP filed suit in the United States District Court of the Northern District of Ohio against HP, alleging, inter alia, federal unfair competition, federal dilution, deceptive trade practices under Ohio statutory law, unfair competition under Ohio common law, and seeking a declaration that their use of the DAWG POUND mark was noninfringing. The district court dismissed the action on the basis of a lack of personal jurisdiction, and the United States Court of Appeals for the Sixth Circuit affirmed in an unreported opinion, *Cleveland Browns Football Co., LLC v. Hawaii-Pacific Apparel Group, Inc.,* 90 Fed. Appx. 868, 2004 WL 232731 (6th Cir. 2004).

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 26:**

Defendants do not dispute this statement, but contend that it is immaterial to the issue of trademark priority before this Court.

**HP'S CONTENTION NO. 27:**

Similar and competing wearing apparel goods bearing the DAWG POUND mark were sold in Ohio and elsewhere from and after 1999, and the source of those goods was, in some cases, HP, and in other cases NFLP and/or the Browns.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 27:**

Defendants dispute this statement as written because the phrase "similar and competing" is opinion and not fact. In any event, Defendants contend that this statement is immaterial to the issue of trademark priority before this Court. Accordingly, no genuine issue of material fact exists to be tried.

**HP'S CONTENTION NO. 28:**

HP's products bearing the marks in suit are sold or licensed by HP in interstate commerce, and the products bearing the marks in suit which have been sold or licensed by the Browns and/or NFLP, are sold or offered for sale in interstate commerce.

**DEFENDANTS' RESPONSE TO HP'S CONTENTION NO. 28:**

      Defendants do not dispute this statement.


Dated:    New York, New York
            July 8, 2005

                              Respectfully submitted,

                              Robert L. Raskopf (RR-5022)
                              Jennifer J. Millones (JM-3470)
                              Jessica A. Rose (JR-4300)
                              **WHITE & CASE**LLP
                              1155 Avenue of the Americas
                              New York, New York 10036
                              Telephone: (212) 819-8200
                              Facsimile: (212) 354-8113
                              ATTORNEYS FOR
                              DEFENDANTS/COUNTERCLAIM
                              PLAINTIFFS